UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | |
|---|---|
| STEWART TITLE GUARANTY, COMPANY, | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) CAUSE NO. 1:10-CV-057 JD ) |
| JOSEPH A. GARRETSON and FORT WAYNE TITLE, INC., | ) ) ) |
| Defendants. | ) ) |

### **Memorandum Opinion and Order**

Now before the Court is Stewart Title Guaranty Company's motion for summary judgment. *See* DE 35. Neither Joseph Garretson nor his company, Fort Wayne Title, Inc, have responded—both defendants are unrepresented and Fort Wayne Title, in fact, is in default *See* DE 33, 34. On the same day that Stewart Title filed its motion, it provided to the unrepresented defendants notice of the motion, their obligations in response, and the consequences of failing to respond, as required by Local Rule 56-1(f) and circuit precedent. *See* DE 35-1; *see also Lewis v. Faulkner*, 689 F.2d 100 (7th Cir. 1982); *Timms v. Frank*, 953 F.2d 281 (7th Cir. 1992). Because the undisputed evidence entitles Plaintiff to judgment in its favor, the Court grants the motion.

### **I. Facts**

Joseph Garretson is the owner of Fort Wayne Title, Inc. This civil suit arises from the same facts that led to Mr. Garretson's criminal convictions for converting title insurance escrow funds. In 2005, Stewart Title and Fort Wayne Title executed a Title Insurance Underwriting Agreement. Under the agreement, Fort Wayne Title was authorized to issue

title insurance policies in Stewart Title's name. *See* DE 37-1 at 9. Fort Wayne Title agreed to sell policies in Stewart Title's name, collect premiums, and remit the premium to Stewart Title on a monthly basis. *Id.* at 10. Fort Wayne Title also provided closing and escrow services in its own name. *Id.* at 3, 11. While Stewart Title had no right to control the daily operation of its closing and escrow business, the agreement did provide that Fort Wayne Title would "keep safely in its escrow account" any funds it received "in connection with transactions in which [Stewart Title's] policies will be issued," and that it would "disburse said funds only for the purpose for which they were entrusted." *Id.* at 10. The agreement also provided that Fort Wayne title would be liable to Stewart Title for any loss "due to the fraud or intentional act or omission of [Fort Wayne Title] or its employees, representatives, or agents, or due to the negligence thereof." This provision specifically includes "[v]iolations of escrow instructions." *Id.* at 12.

On May 14, 2009, Fort Wayne Title provided title insurance and closed a mortgage loan transaction in which Michael J. McAlexander and Ann R. McAlexander took out a $295,000 mortgage from Flagstar Bank, FSB, to refinance their existing $290,453.94 mortgage to BB&T Mortgage. *Id.* at 3–4, 15. On November 25, 2009, Stewart Title received a claim letter from Flagstar Bank asserting that Fort Wayne Title had absconded with the funds meant for BB&T and that the original mortgage had not been paid. On February 25, 2010, Stewart Title wired $284,574.09 to BB&T to payoff the original mortgage and thus fulfill its obligation as title insurer to place Flagstar Bank in first lien position.

Similarly, on May 15, 2009, Fort Wayne Title closed a mortgage loan transaction in which Molly L. Bowman refinanced an existing mortgage from Bank of America with a new $303,500 mortgage from Taylor Bean & Whitaker. *Id.* at 5, 18. On December 1, 2009,

Stewart Title received a claim letter from Bowman's attorney claiming that Bank of America had not been paid and that Garretson and Fort Wayne Title had been converting and retaining funds earmarked to pay off the existing mortgage. *Id.* at 5, 21. In order to place Taylor Bean & Whitaker in first lien position, Stewart Title wired $293,996.54 to Bank of America to pay off its mortgage. *Id.* at 6.

Garretson was prosecuted by the State of Indiana for the crime of conversion or misappropriation of title insurance escrow funds, including funds from the McAlexander and Bowman transactions. *See* DE 37-2 at 4–6. He plead guilty. *See* DE 37-3 at 1–4. As part of a "clean up" statement given to state investigators, Garretson admitted to delaying paying off the McAlexander mortgage while making several payments to BB&T to conceal the failure to pay off the mortgage. *See* DE 37-4 at 13. He also admitted that he used funds from the Bowman closing to pay off another customer's mortgage, to cover up for shortfalls in the escrow account. *Id.* at 16.

Stewart Title also complains about two other loses caused by the negligence of Fort Wayne Title. First, on May 16, 2007, Fort Wayne closed a transaction in which Ethel Betz borrowed $98,000 from Decision One Mortgage, secured by a mortgage on her real estate. *Id.* at 6. As part of the transaction, the co-owner of the real estate, Greg Mead, signed a deed conveying his interest to Betz. *Id.* at 6. Fort Wayne Title delayed in recording the deed from Mead to Betz, however, and in the meantime the Internal Revenue Service recorded a notice of tax lien against Mead. *Id.* at 7. As the title insurer, Stewart Title sent the I.R.S. a check for $18,913.26 to satisfy the lien and thus put Decision One mortgage in first lien position. *Id.* Second, on July 29, 2005, Fort Wayne closed a transaction in which James Jenkins purchased real estate from Steven Neal with a mortgage of $79,200 from Meritage Mortgage

Corporation and a $5,700 note and mortgage from Neal. *Id.* at 7. Although Fort Wayne had issued Meritage a committment that its mortgage would be insured as a first lien, Fort Wayne recorded Neal's mortgage first. *Id.* at 7. When Deutsche Bank, assignee of the Meritage mortgage, sued to foreclose its mortgage, Neal asserted that his mortgage had priority. *Id.* at 8. Stewart Title eventually paid Neal $5,000 to give up his alleged first mortgage. *Id.*

## **II. Analysis**

On summary judgment, the burden is on the moving party to demonstrate that there "is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). That means that the Court must construe all facts in the light most favorable to the nonmoving party, making every legitimate inference and resolving every doubt in its favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986) *Kerri v. Bd. Of Trustees of Purdue Univ.*, 458 F.3d 620, 628 (7th Cir. 2006). Summary judgment is not a tool to decide legitimately contested issues, and it may not be granted unless no reasonable jury could decide in favor of the nonmoving party. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The party seeking summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying" the evidence which "demonstrate[s] the absence of genuine issues of material fact." *Id.* at 323. In this case, the motion for summary judgment is unopposed and none of Stewart Title's factual claims are disputed, so the only remaining question in whether Stewart Title is entitled to judgment as a matter of law based on those facts.

To begin with, the Court notes that it has subject matter jurisdiction over this case under 28 U.S.C. § 1332 based on complete diversity. Stewart Title is a Texas corporation

with its principal place of business in Texas. *See* DE 37-1, ¶ 2. Fort Wayne Title is an Indiana corporation doing business in Allen County, Indiana, and Garretson was the president of Fort Wayne Title and currently resides in a correctional facility in Westville, Indiana. The Court also has personal jurisdiction over both defendants: both Allen County, where the business is located, and LaPorte County, where Garretson currently resides, are within the Northern District of Indiana.

### A.     Claims against Fort Wayne Title

Stewart Title's claims against Fort Wayne Title arise out of the Title Insurance Underwriting Agreement between the two parties. Paragraph 5(b) of the agreement states that Fort Wayne Title would be liable to Stewart Title for any loss "due to the fraud or intentional act or omission of [Fort Wayne Title] or its employees, representatives, or agents, or due to the negligence thereof." DE 37-1 at 12. Based on the undisputed facts, the Court has no difficulty concluding that Fort Wayne Title is liable for Stewart Title's losses on the McAlexander and Bowman policies. Fort Wayne Title was required under the agreement to "keep safely in its escrow account, separate from [its] individual accounts, all funds received . . . in connection with transactions in which [Stewart Title's] title policies will be issued and to disburse said funds only for the purpose for which they were entrusted." Based on Maleka's affidavit and Garretson's own admissions to State investigators, Fort Wayne Title did not use the funds from the McAlexander and Bowman closings "for the purpose for which they were entrusted"—to pay off the original mortgages as part of a refinancing—but for his own purposes. Because of Fort Wayne's intentional and fraudulent acts, Stewart Title had to pay BB&T $284,574.09 and Bank of America $293,996.54 under the polices that Fort Wayne issued on Stewart Title's behalf.

Stewart Title is also entitled to summary judgment on the losses from the Betz and Jenkins policies. As noted above, paragraph 5(b) of the agreement states that Fort Wayne Title would be liable to Stewart Title for any loss "due to the fraud or intentional act or omission of [Fort Wayne Title] or its employees, representatives, or agents, *or due to the negligence thereof.*" DE 37-1 at 12. Regardless of whether "negligence" as used in the agreement refers to a cognizable tort action (duty, breach, causation, and damages), or simply its common meaning of carelessness or lack of attention to what ought to be done, the facts establish that Stewart Title is entitled to indemnification under the agreement.

Makela's affidavit states that Fort Wayne Title "negligently failed to timely record the deed from Mead to Betz and the mortgage from Betz to Decision One until [nearly six months after closing]," which allowed a tax lien against Mead in the amount of $18,913.26 to attach to the deed some two months after Mead had conveyed his portion of the deed to Betz. DE 37-1, ¶ 33. Stewart Title had to pay this lien to the I.R.S. under the terms of the insurance policy issued in its name by Fort Wayne Title. In the Jenkins transaction, Fort Wayne Title "negligently allowed these mortgages to be recorded in the wrong order, so that the mortgage to Neal (which was supposed to be a second mortgage) was recorded first, and the mortgage to Meritage was recorded second." DE 37-1, ¶ 27. Because of this, when Meritage's assignee sought to foreclose its mortgage, Stewart Title had to pay Neal $5,000 to give up his mortgage. Fort Wayne Title acted as a closing agent in the Betz and Jenkins transactions and as such was responsible for having the deeds recorded properly. DE 37-1, ¶ 6. In addition, in its role as Stewart Title's agent in issuing title insurance policies, Fort Wayne Title had a duty to conduct its business in a sound manner consistent with recognized underwriting practices, *see* DE 1-1, ¶ 3(a): it is undisputed that failing to take steps to ensure

that deeds were recorded in a manner consistent with the title insurance policy is not a sound practice.

Therefore, under paragraph 5(b) of the Agreement, Fort Wayne Title is obliged to indemnify Stewart Title for the $578,570.63 loss caused by Fort Wayne Title's intentional and fraudulent acts and the $23,913.26 loss caused by its negligence.

**B.     Claims Against Joseph Garretson**

Stewart Title also seeks summary judgment on its claims against Joseph Garretson for the loss it suffered due to his misappropriation of escrow funds in the McAlexander and Bowman transactions. Stewart Title relies on two theories: the Indiana Crime Victim Statute, *see* Ind. Code § 34-24-3-1; and the rule that a shareholder of a corporation may be held personally liable for his own wrongful acts, *see* Ind. Code § 23-1-26-3(B). The Court agrees that Stewart Title is entitled to summary judgment based on the undisputed facts in the record.

First, there is no dispute that Garretson has been convicted of the crime of "misappropriat[ing] money received or held in a title insurance escrow account," in violation of Ind. Code § 35-43-9-7. Further, the Indiana Crime Victim Statute states that "[i]f a person suffers a pecuniary loss as a result of a violation of IC 35-43 . . . the person may bring a civil action against the person who caused the loss." Ind. Code § 34-24-3-1. The victim may recover up to three times its loss, plus the costs of the action, a reasonable attorney's fee, and certain other costs and expenses. *Id.* Second, to the extent that Fort Wayne Title misappropriated the funds for its use, there is no dispute that Garretson personally participated in the conversion. *See State, Civil Rights Comm'n v. County Line Park, Inc.*, 738 N.E.2d 1044, 1050 (Ind. 2000) ("[A]n officer is personally liable for the torts in which she

7

has participated or which she has authorized or directed."). Makela's affidavit establishes that Stewart Title suffered a loss of $578,570.63. Under the Crime Victim Statute, Stewart Title would be entitled to recover up to three times that amount plus costs and attorneys' fees. However, Stewart Title only seeks a judgment against Garretson for the amount of its actual loss, so the Court will grant summary judgment in the amount of $578,570.63.

### III. Conclusion

For the foregoing reasons, the Court **GRANTS** Stewart Title Guaranty Company's Motion for Summary Judgment [DE 35]. Accordingly, the Court directs the Clerk to **ENTER FINAL JUDGMENT** against Fort Wayne Title, Inc., in the amount of $602,483.89, and against Joseph A. Garretson in the amount of $578,570.63.

    SO ORDERED

    ENTERED:   September 26, 2012

                                          /s/ JON E. DEGUILIO
                                          Judge
                                          United States District Court